**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Jayson Swigart

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAYSON SWIGART, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**PARCEL PENDING, INC.,**<br><br>Defendant. | **Case No.:** 18-cv-2238 BEN (WVG)<br><br>**PLAINTIFF JAYSON SWIGART'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE:** October 21, 2019<br>**TIME:** 10:30 a.m.<br>**COURTROOM:** 5A<br><br>**HONORABLE ROGER T. BENITEZ** |

**Case No.:** 18-cv-2238 BEN (WVG)                    *Swigart, et al. v. Parcel Pending, Inc.*
**PLAINTIFF JAYSON SWIGART'S MOTION FOR PRELIMINARY OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiff JAYSON SWIGART ("Swigart") submits this Memorandum in Support of Final Approval of the Parties' Class Action Settlement. As discussed in Swigart's Motion for Preliminary Approval, the Parties' Settlement Agreement resolves all claims arising in this matter against Defendant PARCEL PENDING, INC. ("Parcel Pending") as a result of Parcel Pending's conduct of recording cellular telephonic communications without the consumer's knowledge or consent in violation of California's Invasion of Privacy Act, California Penal Code § 632.7 ("CIPA").

The reaction of the Class and the result obtained establishes that this settlement clearly deserves final approval. Assuming the Court awards the amount of attorneys' fees requested, and after deducting the cost of notice and claims administration and incentive payment, each approved claimant will receive $6,888.70 in the form of a cash payment. That is an excellent result for the Class since these individuals are receiving more than the $5,000.00 in statutory damages pursuant to CIPA despite Parcel Pending's strong defenses discussed herein.

With this Motion, Swigart now seeks final approval of the Parties' Class Action Settlement. No facts have arisen that would call into question the Class Action Settlement being fair, adequate and reasonable. [*See* Order, ECF No. 21; and, 2019 U.S. Dist. LEXIS 102775 (S.D. Cal. June 19, 2019)]. As discussed in detail below, the proposed Settlement satisfies all criteria for settlement approval under Ninth Circuit authority.

## II. PROCEDURAL BACKGROUND

The Parties' settlement is the culmination of the Class Action Complaint for damages filed by Swigart. [ECF No. 1]. Thereafter, the Parties immediately engaged in open communications and informally exchanged evidence to quickly

address the respective claims and defenses at issue herein. The Parties then proceeded to a full-day mediation with Bruce Friedman, Esq. of JAMS and were finally able to obtain the proposed settlement now pending before the Court.

### A. PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION

Swigart filed a Motion for Preliminary Approval of the current Class Action Settlement. [ECF No. 18]. That Motion was granted by this Court on June 19, 2019 and the Court preliminarily determined that the settlement was fair, reasonable, and adequate [ECF No. 21]. In compliance with this Court's Preliminary Approval Order, Swigart filed Swigart's Motion for Attorneys' Fees; Costs; and, Incentive Award for Swigart on July 3, 2019. [ECF No. 23].

Following Preliminary Approval, the claims administrator, First Class, Inc., ("Final Approval"), has performed its obligations pursuant to the Settlement Agreement. [*See* Declaration of Bailey Hughes ("Hughes Decl.") filed concurrently herewith].

### B. CLASS NOTICE DISSEMINATION

"Adequate notice is critical to court approval of a class [action] settlement." *Hanlon v Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(1). First Class administered the notice process following the Preliminary Approval Order. In accordance with the Settlement Agreement and the Preliminary Approval Order, First Class provided direct notice via mail and email; as well as a settlement website and toll-free number. [Hughes Decl. ¶¶ 4 - 5].

The various forms of Class Notice provided detailed information regarding (a) class members' rights, including the manner in which objections and exclusions could be lodged; (b) the case's nature, history and progress; (c) the proposed settlement and reason for the settlement; (d) the settlement's benefits; (e) Class Counsel's requested fees and costs; (f) the Fairness Hearing's date, time

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

and location; and, (g) Class Counsel's contact information. [*Id.*]. First Class estimates that the costs required to finalize this process will be a total of $4,616.18

### C. RESPONSE TO CLASS NOTICE

Class members contacted First Class and Class Counsel to discuss the Class Notice, their options and the case status. Out of all the class members that received notice, not a single consumer either objected or requested to be excluded from this Class Settlement. [Hughes Decl., ¶¶ 16 -17].

### III. LEGAL ARGUMENT

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)). The purpose of this Rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id*. In evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hanlon*, 150 F.3d at 1025 (9th Cir. 1998) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Nevertheless, the District Court does not have the "ability to delete, modify, or substitute certain provisions." *Id*. at 1026.

### A. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Federal Courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); 4 Alba Conte &

Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th Ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here – individual litigation – would require a massive expenditure of public and private resources and, given the relatively small value of the claims of the proposed individual class members, would be impractical. Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

### B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Before granting final approval of a class action settlement, a reviewing court must first find the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A). In evaluating whether a class settlement is "fair, adequate and reasonable," courts generally refer to eight criteria, with differing degrees of emphasis: (1) the likelihood of success by the plaintiff; (2) the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and, (8) the presence of good faith and the absence of collusion. *See* 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11.43 "General Criteria for Settlement Approval" (3d ed. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash 2009) (same). Here, the record before the Court

demonstrates that the settlement agreement satisfies the Ninth Circuit's standard and that final approval is warranted. Thus, the Parties request this Court grant the Parties' Motion for Final Approval.

### 1. The Strength of Swigart's Case and the Risks, Expenses, Complexity and Likely Duration of Further Litigation

Swigart's claims against Parcel Pending have merit and would make a compelling case if Swigart's claims were tried. If Swigart were to prevail, Parcel Pending could face substantial damages on a class-wide basis. Nevertheless, Swigart and the Class would face a number of challenges if the litigation were to continue, justifying this compromise settlement.

#### a. *Challenges to the Claims on Their Merits*

In Swigart's Preliminary Approval Motion, there were a number of potential issues if the case proceeded on the merits. [Preliminary Approval Motion, 15:13-17:15]. Those include various individual issues relating to Parcel Pending's policy of warning individuals of telephonic recording on inbound calls; and, arbitration. Of course, Parcel Pending denies any and all liability related to Swigart's Complaint. While Swigart believes that Swigart would overcome each of these issues, the risk to the class is substantial. Thus, Swigart believes it is in the best interest of the Class to accept this monetary benefit and seeks final approval of this settlement.

#### b. *The Risk of Maintaining Class Action Status Throughout Trial*

The benefits of settlement and a plaintiff's chances of success are typically evaluated together. *See, e.g. Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement."). Through the course of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

litigation, Swigart believes that Swigart obtained sufficient information to establish that this Class satisfies the requirements of Federal Rule of Civil Procedure 23; however, Parcel Pending has focused on the issues addressed above to argue that Swigart and the Class Members face numerous risks in moving forward and that class treatment of this matter is inappropriate.

In addition, there is a substantial risk of losing inherent in any jury trial. Even if Swigart prevailed at trial, Parcel Pending would almost certainly appeal, threatening a reversal of any favorable outcome. *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010) ("[L]iability and damages issues – and the outcome of any appeals that would likely follow if the Class were successful at trial – present substantial risks and delays for Class Member recovery.").

Under the Settlement Agreement, the Class Members may avoid each of the described risks and receive substantial cash benefits while protecting future consumers doing business with Parcel Pending through the agreed-upon change to Parcel Pending's system. "[T]his settlement . . . guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8. Thus, Swigart contends that the substantial risk weighs in favor of granting final approval of this matter.

### 2. The Amount Offered in Settlement

The Settlement requires Parcel Pending to pay $300,000.00 into a settlement fund of out of which eligible Class Members will receive their share of cash payments. This is a non-reversionary fund meaning no amount of this fund will revert back to Parcel Pending. Given the potential issues described above, this settlement represents an outstanding result for Class Members, particularly

because Class Counsel estimates that each class member will recover $6,888.70.

Moreover, the Class and future consumers also receive non-monetary benefits valued at $100,000.00. This includes: 1) $20 registration voucher, 2) $9 late fee voucher, 3) and training costs incurred by Parcel to implement customer service training in compliance with CIPA. [Preliminary App. Motion, 3:17-26].

### a. *Size of the Settlement Fund*

The $400,000.00 settlement fund was reached after extensive negotiation through mediation. It reflected a compromise amount that experienced Class Counsel and their client believed reflected a fair result in light of the burden, risk, and expense both sides faced through continued litigation in light of similar CIPA class action settlements that had received final court approval, which are discussed in more detail below.

### b. *Likely Recovery Per Claim*

As of the date of this filing, the Claims Period has closed and Class Counsel believes that each class member will receive $6,888.70, an amount that exceeds the available statutory damages.

### 3. The Extent of Discovery Completed

The Settlement was reached only after Class Counsel's thorough investigation and analysis of the factual and legal issues involved. As detailed above, Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in this Action. In addition, Parcel Pending also provided Swigart with informal discovery relating to the proposed Class and openly discussed the authority supporting the respective claims and defenses, all to confirm that the settlement was fair, reasonable and adequate. [*Id.*].

### 4. The Experience and Views of Counsel

Class Counsel are particularly experienced in litigating CIPA claims and have a keen understanding of the legal and factual issues involved in this case. Based upon this experience, Class Counsel fully endorses this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the settlement. *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1303 (S.D. Cal. Mar. 31, 2017) (Where "[b]oth Parties are represented by experienced counsel," their recommendation to adopt the terms of the proposed settlement "is entitled to great deal of weight.") *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) ("Both Parties' negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement."); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of Swigart's counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.")

### 5. The Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 (N.D. Cal. 2007) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D.

Cal. 2004) (3 objections out of 75,630 notices); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1303 (S.D. Cal. Mar. 31, 2017) (one valid objection out of 8,253 notices); *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving the district court's finding that this fairness factor weighed in favor of settlement when "only 45 of approximately 90,000 notified class members objected to the settlement"); *Rodriguez v. West Publ'g Corp.*, No. 05-3222, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (54 objections out of 376,000 class members); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n,* 79 F.R.D. 571 (E.D. Pa. 1978) (approving settlement where there were 8,000 opt outs out of 188,000).

The response by class members demonstrates widespread approval of the settlement. Out of a class of thousands of persons, there have been zero opt-outs and zero objectors. The absence of opt-outs and the absence of objectors show that class members viewed the settlement as fair, reasonable, and adequate.

### 6. The Presence of Good Faith, Absence of Collusion, and the Approval of a Third-Party Mediator Support Final Approval of the Settlement

In addition to considering the above factors, the Ninth Circuit has indicated that the Court should carefully review the settlement for any signs of collusion or conflicts of interest. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the

assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 McLaughlin on Class Actions § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion"); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive").

As detailed above, the Settlement is the result of adversarial arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class action cases. Accordingly, no signs of collusion or conflicts of interest are present here.

### IV.  CONCLUSION

For all of the foregoing reasons, Swigart respectfully requests this Court enter an Order granting final approval of the Settlement. This strong settlement will provide the following:

| | |
|---|---|
| Pro Rata Payment | $6,888.70 |
| Non-Monetary Benefit | $100,000.00 |
| Incentive Award | $2,500.00 |
| Attorneys' Fees and Costs | $100,000.00 |
| Estimated Notice Costs | $4,616.18 |

Dated: September 17, 2019　　　　　　　　　　**KAZEROUNI LAW GROUP, APC**

By: ___/s/ Matthew M. Loker___
　　MATTHEW M. LOKER, ESQ.
　　ATTORNEY FOR PLAINTIFF